The PEOPLE of the State of Colorado, In the Interest of S.M.A.M.A., a Child,

Upon the Petition of the Denver Department of Human Services, Petitioner–Appellee,

and

Concerning D.A.N., Respondent–Appellant.

No. 07CA0933.

Colorado Court of Appeals, Div. A.

Oct. 18, 2007.

Arlene Dykstra, Acting City Attorney, Laura Grzetic Eibsen, Assistant City Attorney, Denver, Colorado, for Petitioner–Appellee.

Terry Ross, Denver, Colorado, for Respondent–Appellant.

Opinion by Chief Judge DAVIDSON.

D.A.N. (mother) appeals from the judgment terminating the parent-child legal relationship between her and her child, S.M.A.M.A. We affirm.

I.

We first address whether mother's notice of appeal was timely filed, and conclude that it was.

The appellant in a dependency and neglect proceeding has twenty-one days within which to file a notice of appeal from a termination order. C.A.R. 3.4(b); *see also People in Interest of A.J.*, 143 P.3d 1143, 1146 (Colo. App.2006); *People in Interest of A.J.H.*, 134 P.3d 528, 530 (Colo.App.2006). When notice of entry of the order is mailed to the parties, the time for filing the notice of appeal begins to run on the date of mailing. C.A.R. 3.4(b).

Here, the trial court entered the written order terminating mother's parental rights on April 13, 2007. On April 25, 2007, the court mailed the order to mother and also deposited it, "via daily delivery by the Child Protection Legal Unit court Liaison," in her attorney's courthouse mailbox located in the Denver Juvenile Court clerk's office.

Because she did not file her notice of appeal until May 17, 2007, twenty-two days after the order was deposited in her attorney's courthouse mailbox, this court issued an order to show cause why the appeal should not be dismissed for failure to file a timely notice of appeal. *See A.J.*, 143 P.3d at 1146 ("Unless a notice of appeal is timely filed, the court of appeals lacks jurisdiction to hear the appeal."); *A.J.H.*, 134 P.3d at 530. In response, mother argued that service to an attorney's courthouse mailbox constitutes service by mail and, therefore, three days must be added to the time in which to file the notice of appeal pursuant to C.R.C.P. 6(e).

The issue was deferred to this division to resolve whether the three-day mailing rule applies to the computation of time in which to file a notice of appeal pursuant to C.A.R. 3.4, and whether mother's notice of appeal was timely filed.

A. *Service by Delivery of the Order to Mother's Attorney's Courthouse Mailbox Constitutes Service by Mail for Purposes of the Three–Day Mailing Rule*

In determining the meaning of procedural rules such as the Colorado Rules of Juvenile, Civil, and Appellate Procedure, we give the words of the rules their plain mean-

ing and read all the rules in pari materia to effectuate their intent and avoid inconsistencies. *A.J.H.,* 134 P.3d at 531.

Dependency and neglect proceedings are civil in nature, and the Colorado Rules of Civil Procedure apply in such proceedings when a particular procedure is not addressed in the Colorado Children's Code or the Colorado Rules of Juvenile Procedure. C.R.J.P. 1; *People in Interest of Z.P.,* 167 P.3d 211, 214 (Colo.App.2007).

Because neither the Code nor the Juvenile Rules address the method by which a trial court may serve orders on parties in dependency and neglect cases, the Colorado Rules of Civil Procedure apply and govern the appropriate methods of service.

Pursuant to C.R.C.P. 58(a), if the parties are not present when the court signs a judgment, "a copy of the signed judgment shall be immediately mailed by the court, pursuant to C.R.C.P. 5, to each absent party who has previously appeared."

Under C.R.C.P. 5(b)(1), service on a party represented by an attorney "is made upon the attorney unless the court orders personal service upon the party." It is not disputed here that C.R.C.P. 5(b)(2)(D) allows service by other means which includes, as relevant here, delivery to the attorney via courthouse mailbox. And, C.R.C.P. 6(e) provides that "[u]nless otherwise specifically ordered," when a filing deadline is triggered by service of an order or other document pursuant to C.R.C.P. 5(b)(2)(D), "three [calendar] days shall be added after the prescribed period would expire" under the other rules that define the length of the prescribed period.

Thus, here, service of the order pursuant to C.R.C.P. 5(b)(2)(D) was the functional equivalent of service by mail for purposes of determining whether C.A.R. 26(c), the appellate counterpart to C.R.C.P. 6(e), applies to extend the deadline for filing a notice of appeal pursuant to C.A.R. 3.4(b).

B. *Under C.A.R. 26(c), Three Days Must Be Added to the Deadline for Filing a Notice of Appeal Pursuant to C.A.R. 3.4(b) When the Order Appealed Is Served on the Parties by Mail*

 Under C.A.R. 26(c), whenever "a party is required or permitted to do an act

within a prescribed period after service of a paper upon him . . . by mail, three days shall be added to the prescribed period." The purpose of this rule is to prevent the time required for mail delivery from systematically shortening any ensuing deadlines. *Clark v. City of Gunnison,* 826 P.2d 402, 404 (Colo. App.1991).

The rule expressly provides that it "shall not apply to the notice of the entry of judgment . . . which may be transmitted by mail as provided by C.A.R. 4(a)." Thus, by its terms, the three-day mailing rule cannot be used to extend the deadline for filing a notice of appeal in most civil cases. *See Cline v. Farmers Ins. Exch.,* 792 P.2d 305, 306 (Colo. App.1990).

But C.A.R. 4(a) does not apply here. *A.J.,* 143 P.3d at 1147; *A.J.H.,* 134 P.3d at 531–32. Dependency and neglect appeals are governed by C.A.R. 3.4, and neither C.A.R. 3.4 nor C.A.R. 26(c) prohibits application of the three-day mailing rule to notices of appeal filed in dependency and neglect cases.

As the majority observed in *A.J.,* 143 P.3d at 1147–48, we presume the supreme court was aware of the interplay between C.A.R. 4(a) and 26 when it adopted C.A.R. 3.4. Thus, if the court had intended to prohibit application of the three-day mailing rule of C.A.R. 26(c) to notices of appeal filed pursuant to C.A.R. 3.4, it would have done so expressly, either in the language of C.A.R. 3.4 itself, or by amending C.A.R. 26(c) to provide, for example, that the rule "shall not apply to the notice of the entry of judgment . . . which may be transmitted by mail as provided in C.A.R. 3.4 and 4(a)." But it did not do so, and we will not infer an unexpressed intent from the absence of such explicit language. *See A.J.,* 143 P.3d at 1147; *cf. Bonanza Corp. v. Durbin,* 696 P.2d 818, 821 (Colo.1985) (comparing C.A.R. 26(c) and C.R.C.P. 6(e), and concluding that the absence of a reference in C.R.C.P. 6(e) to an entry of judgment reinforces the interpretation that C.R.C.P. 6(e) extends the time for filing a C.R.C.P. 59 motion to alter or amend a judgment); *Littlefield v. Bamberger,* 10

P.3d 710, 712 (Colo.App.2000) ("if the supreme court had intended to exclude C.R.C.P. 59 motions from the three-day extension period in C.R.C.P. 6(e), it would have done so expressly as it did in C.A.R. 26(c)."); *Digital Equip. Corp. v. Indus. Claim Appeals Office,* 894 P.2d 54, 56 (Colo.App.1995) ("[W]e are not at liberty to read non-existent terms into the plain language of the statute, nor to imply a 'mailing window,' analogous to that provided under C.R.C.P. 6(e).").

Indeed, C.A.R. 3.4(n) provides that the "[c]omputation of any time period prescribed by this rule shall be in accordance with C.A.R. 26(a) and (c), *unless otherwise provided in this rule.*" (Emphasis added.)

We interpret procedural rules, like statutes, as a whole and in a manner that gives consistent, harmonious, and sensible effect to each part whenever possible. *People v. Stanley,* 169 P.3d 258, 260 (Colo.App.2007).

Considered together, the express provision in C.A.R. 3.4(n) that C.A.R. 26(c) applies to the computation of filing deadlines set forth in C.A.R. 3.4, and the lack of a reference in C.A.R. 3.4(b) to C.A.R. 26(c), lead us to conclude that three days must be added to the deadline for filing a notice of appeal pursuant to C.A.R. 3.4(b) when the order appealed is served on the parties by mail.

*Industrial Claim Appeals Office v. Zarlingo,* 57 P.3d 736 (Colo.2002), and *State Board of Registration v. Brinker,* 948 P.2d 96 (Colo. App.1997), do not require a different result. Those cases held that an appellant is not entitled to an additional three days for mailing when the deadline for filing a notice of appeal is defined by statute and the applicable statute establishes that the time for filing is triggered by the date the order appealed is mailed to the parties. *Zarlingo,* 57 P.3d at 737–38; *Brinker,* 948 P.2d at 99.

We note that in *Zarlingo,* 57 P.3d at 737, the court said that the "addition of three days to the time otherwise allowed for a party to act, offsetting the likely delay in actual notice to that party caused by mailing, simply cannot be reconciled with a time limit that already accounts for mailing by prescribing a specified number of days, measured from the date of mailing." However, as

we read the opinion, the anomaly of adding three days for mailing when the filing deadline is triggered by the date of mailing was not the critical factor in the court's analysis. Rather, the critical factor was that the filing deadline was predicated on the applicable statute, not the appellate rules, and when a statute sets forth a particular procedure, court-promulgated rules simply do not apply. *See also* § 2–4–108, C.R.S.2007 (statute governing the computation of statutory time periods does not provide for an additional three days when the deadline is triggered by mailing); *Antolovich v. Brown Group Retail, Inc.,* —— P.3d ——, ——, 2007 WL 2389808 (Colo.App. No. 04CA1528, Aug. 23, 2007); *Brinker,* 948 P.2d at 99; *Digital Equip. Corp.,* 894 P.2d at 56; *Lutheran Hosp. & Homes Soc'y v. Indus. Comm'n,* 710 P.2d 496, 498 (Colo.App.1985).

Here, although the deadline for filing a notice of appeal is triggered by the date the order appealed is mailed to the parties, unlike in *Zarlingo* and *Brinker* the deadline is defined by C.A.R. 3.4(b), not by statute, and another subpart of the same rule expressly provides that "the computation of any time period prescribed by this rule shall be in accordance with" C.A.R. 26(c). C.A.R. 3.4(n).

Nor does C.A.R. 3.4(b)(3), which provides that the time in which to file a notice of appeal in dependency and neglect cases "will not be extended, except upon a showing of good cause pursuant to C.A.R. 2 and C.A.R. 26(b)," preclude application of the three-day mailing extension provision of C.A.R. 26(c). This limiting language does not negate the express provision in C.A.R. 3.4(n) that C.A.R. 26(c) applies when calculating deadlines in dependency and neglect appeals. *See A.J.,* 143 P.3d at 1146 (recognizing the parallel between C.A.R. 3.4(b)(3) and the excusable neglect extension provisions in C.A.R. 4(a) and (b), and concluding that the limiting language of C.A.R. 3.4(b)(3), without more, does not operate to preclude the extension of filing deadlines in dependency and neglect cases pursuant to C.A.R. 26(b) ).

Indeed, instead of extending an existing deadline, the three-day mailing rule changes how the filing deadline is determined in the first instance. Moreover, the mailing rule is

mandatory. Thus, while C.A.R. 3.4(b)(3) limits our discretionary extension of filing deadlines in dependency and neglect appeals, it does not affect the mandatory application of the three-day mailing rule. *Compare* C.R.C.P. 6(b) (allowing for discretionary extensions of filing deadlines in civil cases), *with* C.R.C.P 6(e) (providing that three days "shall" be added to filing deadlines triggered by mailing of an order).

Accordingly, the deadline for mother to appeal the order terminating her parental rights was Monday, May 21, 2007—twenty-one days after the trial court deposited the order in counsel's courthouse mailbox (May 16), plus three days for mailing (May 19), plus two days (because May 19 was a Saturday, pursuant to C.A.R. 26(a), the deadline was the following Monday). Thus, her May 17, 2007, notice of appeal was timely filed, and we discharge the order to show cause.

## II.

■ Mother claims the trial court erred by finding that she did not reasonably comply with the treatment plan. We disagree.

■ To terminate the parent-child legal relationship pursuant to section 19–3–604(1)(c), C.R.S.2007, clear and convincing evidence must establish that an appropriate treatment plan, approved by the trial court, has not been complied with by the parent or has not been successful in rehabilitating the parent. *People in Interest of A.M.D.*, 648 P.2d 625, 634–35 (Colo.1982).

It is the parent's responsibility to secure compliance with and success of a treatment plan. *People in Interest of J.M.B.*, 60 P.3d 790, 792 (Colo.App.2002); *People in Interest of A.H.*, 736 P.2d 425, 427–28 (Colo.App. 1987). Absolute compliance is not required. *People in Interest of C.L.I.*, 710 P.2d 1183, 1185 (Colo.App.1985). But partial compliance, or even substantial compliance, may not be sufficient to correct or improve the parent's conduct or condition. *People in Interest of D.L.C.*, 70 P.3d 584, 588 (Colo.App. 2003); *People in Interest of D.M.W.*, 752 P.2d 587, 588 (Colo.App.1987).

■ The trial court has discretion to determine the credibility of the witnesses; the sufficiency, probative effect, and weight of the evidence; and the inferences and conclusions to be drawn from it. If supported by the record, a trial court's findings and conclusions on these issues will not be disturbed on review. *People in Interest of C.A.K.*, 652 P.2d 603, 613 (Colo.1982).

Here, the child was born about a week after mother's parental rights were terminated as to her two older children. The reasons for the child's removal from the home were the same as the reasons the first two children had been removed: mother's mental health problems and poor parenting skills, father's substance abuse problems, an unsafe and unstable home environment, and domestic violence issues between the parents.

Like the unsuccessful treatment plans in the prior proceedings, the treatment plan in this case required mother to obtain and maintain stable housing and income; resolve the ongoing domestic violence issues by obtaining a restraining order against father and participating in counseling to help her avoid future abusive relationships; and participate in mental health therapy and follow any treatment recommendations. Addressing mother's mental health disability was one of the critical components of the treatment plan, because her disability prevented her from being an appropriate and effective parent for the child. She suffered from depression, anxiety, and personality disorder, and was manipulative, dishonest, and distrustful. Although she denied she had mental health issues and refused to participate in treatment, mother made progress during the first nine months of the proceedings with other aspects of the treatment plan, including improving the home environment, obtaining a restraining order against father, and maintaining stable employment. Accordingly, despite mother's unaddressed mental health problems, the child was returned to her care.

The Department of Human Services provided mother with intensive in-home services to teach her life and parenting skills, but mother could not manage the demands of work and parenting, and during most of the time the child was in her care, she left him with a respite-foster care family for several

days and sometimes weeks at a time. She spent very little time with the child, fell behind in her rent, did not follow through with commitments to the child, routinely failed to show up for appointments with treatment providers, and did not provide appropriate meals for the child. Mother quit her job and did not take the necessary steps to obtain disability benefits or other financial assistance. She refused mental health treatment, did not participate in domestic violence classes, and became involved with another abusive man. After about nine months, the situation had deteriorated to the point where the child was again removed from her care and placed with the respite-foster care family.

After the child was removed from the home the second time, mother had another baby. The caseworker, in-home services provider, and human services advocate testified that mother started bringing the baby to her weekly visits with the child, but could not handle both children without help from the visit supervisors. Mother missed at least two visits, which was upsetting to the child, and she continued to tell him he would be going home with her soon, despite the visit supervisor's requests that she stop doing so because it was confusing for him. The child was traumatized by the weekly separations from both mother and the foster family, and was aggressive, suffered from night terrors, and hoarded food after each visit.

The caseworker and treatment providers agreed that mother could not be an effective parent because she struggled to meet her own basic needs, could not manage her time or maintain stable income, lacked basic parenting skills, could not bond with the child, and refused to participate in therapy to address her mental health issues. The problems that led to the child's removal from the home were the same as the problems that led to the termination of mother's parental rights as to her two oldest children, and she had made no progress toward addressing her mental health issues, and very little progress toward addressing the other issues, during the five years the department had been involved with the family. The caseworker testified that mother had ample time to comply

with the treatment plan, but failed to do so because she refused to take advantage of the services the department provided.

Based on this evidence and its evaluation of the credibility of the witnesses, the trial court found that mother's compliance with her treatment plan "has at times been good, but, overall, there have been significant areas of noncompliance," particularly with the mental health, domestic violence, and financial responsibility components of the plan. The court further found that the "plan has not been successful in rehabilitating her to the point that she can provide parental care for [the child] on a full time basis . . . as she has not been able to demonstrate her ability to meet her own needs consistently."

Because the record supports the court's findings, we find no abuse of discretion in its determination, based on clear and convincing evidence, that mother did not reasonably comply with the treatment plan. *See People In Interest of K.D.*, 139 P.3d 695, 698 (Colo. 2006); *People in Interest of J.A.S.*, 160 P.3d 257, 261 (Colo.App.2007); *People in Interest of D.P.*, 160 P.3d 351, 355 (Colo.App.2007).

### III.

Mother also claims the trial court erred by finding that the department made reasonable efforts to rehabilitate her and reunite her with the child. Specifically, she claims the department did not provide services that adequately addressed her mental health disability until two months before the termination hearing. Again, we disagree.

■ The state must make reasonable efforts to prevent out-of-home placement of abused or neglected children and to reunite the family. §§ 19–1–103(89), 19–3–100.5, 19–3–604(2)(h), C.R.S.2007; *see also People in Interest of J.M.*, 74 P.3d 475, 477 (Colo.App. 2003).

Among the efforts required of the department are an assessment of the family and the development of a case plan for the provision of necessary services, which may include home-based counseling and referrals to public and private assistance resources. § 19–3–208(2)(b), C.R.S.2007. The department must also devise an appropriate treatment plan for

the parent. § 19–3–508(1)(e), C.R.S.2007. The department is required to provide mental health services only if they are "determined necessary and appropriate" and the state obtains "increased federal funding or any other moneys appropriated" for such services. § 19–3–208(2)(d)(IV), C.R.S.2007.

Here, the evidence established that mother's mental health problems prevented her from developing the parenting and life skills necessary for her to be an appropriate parent to the child. As discussed above, she denied she had a mental health disability and refused to meaningfully participate in the treatment the department provided, not just during this proceeding, but also in the previous dependency and neglect proceedings involving her two oldest children. Thus, contrary to mother's contention, her inability to address her mental health disability earlier in the proceedings was due to her failure to comply with the mental health requirements of the treatment plan, not the unavailability of adequate services or the department's failure to provide additional services until it was too late.

Because the record supports the trial court's determination that the department made reasonable efforts to rehabilitate mother, we will not disturb it on review. *See* *C.A.K.,* 652 P.2d at 612–13; *J.M.,* 74 P.3d at 477–78.

The judgment is affirmed.

FURMAN and METZGER *, JJ., concur.