The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
June 27, 2019

## 2019COA99

**No. 19CA0647, *People in Interest of R.C.* — Health and Welfare — Care and Treatment of Persons with Mental Health Disorders — Involuntary Administration of Medication**

This is the first reported Colorado decision that addresses a situation where the People seek the involuntary administration of medications that the treating physician believes may need to be given at a later date, if the patient's current medication stops being efficacious, but that do not currently need to be administered. Nonetheless, the lower court granted the physician immediate authorization to administer the additional medications. In addition, the People did not seek an order for the involuntary administration of the patient's current medication, despite the psychiatrist's concern that the patient may stop taking it voluntarily. A division of the court of appeals concludes that the People did not carry their

burden under *People v. Medina*, 705 P.2d 961 (Colo. 1985), to prove

that the involuntary administration of the additional medications

was the less intrusive alternative.

COLORADO COURT OF APPEALS                                    **2019COA99**

Court of Appeals No. 19CA0647
Pueblo County District Court No. 19MH81
Honorable Jill S. Mattoon, Judge

The People of the State of Colorado,

Petitioner-Appellee,

In the Interest of R.C.,

Respondent-Appellant.

ORDER REVERSED

Division IV
Opinion by JUDGE LIPINSKY
Román and J. Jones, JJ., concur

Announced June 27, 2019

Cynthia Mitchell, County Attorney, Kate H. Shafer, Special Assistant County
Attorney, Pueblo, Colorado, for Petitioner-Appellee

The Law Firm of John L. Rice, John L. Rice, Pueblo, Colorado, for Respondent-
Appellant

¶ 1     Appellant, R.C., appeals the district court's order authorizing mental health personnel to medicate him involuntarily.  We reverse.

## I.     Background

¶ 2     R.C. was committed to the Colorado Mental Health Institute at Pueblo (CMHIP) after being found incompetent to proceed in a criminal case.  A CMHIP staff psychiatrist, Dr. Lennart Abel, diagnosed R.C. with bipolar disorder mania with psychosis.

¶ 3     Following R.C.'s assault of a staff member at CMHIP, the People filed a petition seeking a court order authorizing the administration of involuntary medication.  At a hearing on the petition, Dr. Abel testified that R.C. was voluntarily taking Zyprexa.  Dr. Abel opined that R.C. would not continue to take this drug voluntarily because he had previously refused to take medication.

¶ 4     The People did not seek an order allowing R.C. to be involuntarily medicated with Zyprexa, however.  Rather, the People sought authorization to medicate R.C. involuntarily with six other drugs: Olanzapine, Haldol, Abilify, Lithium, Depakote, and Clozapine (the Six Medications).  Dr. Abel testified that R.C. "can be treated with Zyprexa but I'm not sure if that would be the case over the time.  Therefore, I have the other medications on the petition."

1

¶ 5    The district court granted the People's petition and entered an order authorizing the involuntary administration of the Six Medications, effective immediately. On appeal, R.C. contends that insufficient evidence supported the order. We agree and, therefore, reverse.

## II.    Involuntary Administration of Medication

¶ 6    An order for involuntary administration of medications must be supported by clear and convincing evidence

> (1) that the patient is incompetent to effectively participate in the treatment decision; (2) that treatment by antipsychotic medication is necessary to prevent a significant and likely long-term deterioration in the patient's mental condition or to prevent the likelihood of the patient's causing serious harm to himself or others in the institution; (3) that a less intrusive treatment alternative is not available; and (4) that the patient's need for treatment by antipsychotic medication is sufficiently compelling to override any bona fide and legitimate interest of the patient in refusing treatment.

*People v. Medina*, 705 P.2d 961, 973 (Colo. 1985). The People bear the burden to prove each element. *People in Interest of Strodtman*, 293 P.3d 123, 131 (Colo. App. 2011).

¶ 7　"Applying the *Medina* test involves mixed questions of law and fact." *People v. Marquardt*, 2016 CO 4, ¶ 8, 364 P.3d 499, 502. We defer to the district court's factual findings if they are supported by the record and review its legal conclusions de novo. *Id.* The district court, as fact finder, "has discretion to determine the credibility of the witnesses; the sufficiency, probative effect, and weight of the evidence; and the inferences and conclusions to be drawn from it. If supported by the record, a trial court's findings and conclusions . . . will not be disturbed on review." *People in Interest of S.M.A.M.A.,* 172 P.3d 958, 962 (Colo. App. 2007); *accord People in Interest of C.A.K.,* 652 P.2d 603, 613 (Colo. 1982).

¶ 8　R.C. contests only the third element of the *Medina* test, asserting that the district court erred in finding that no less intrusive treatment alternative was available. He argues that his voluntarily taking Zyprexa at the time of the hearing clearly showed that a less intrusive treatment option was available. We conclude that the record does not support the district court's finding that the People met their burden on this element of *Medina.*

¶ 9　A treatment is less intrusive when it has fewer harmful side effects and is at least as effective at treating a patient's condition as

3

the proposed treatment. *Strodtman*, 293 P.3d at 133 (citing *Medina*, 705 P.2d at 974). This element "encompasses not only the gravity of any harmful effects from the proposed treatment but also the existence, feasibility, and efficacy of alternative methods of treating the patient's condition or of alleviating the danger created by that condition." *Medina*, 705 P.2d at 974.

¶ 10 Dr. Abel testified that R.C. had been taking Zyprexa voluntarily for ten days before the hearing. Dr. Abel agreed that R.C.'s behavior had improved since he began taking Zyprexa, testifying that R.C. is "not as manic as he was before." He also stated that, even if the court authorized the administration of the Six Medications, he would "keep [R.C.] on Zyprexa" because, "for the time being, [R.C.] can be treated with Zyprexa." He was, however, "not sure if that would be the case over . . . time."

¶ 11 Thus, Dr. Abel did not testify that R.C. needed to receive the Six Medications at the time of the hearing and, moreover, did not state unconditionally that R.C. would need to take the Six Medications in the future.

¶ 12 Based on this record, we agree with R.C. that insufficient evidence supports the district court's finding that no less intrusive

4

treatment alterative than Zyprexa is available. To the contrary, Dr. Abel's testimony establishes that continued administration of Zyprexa is a less intrusive treatment alternative than administration of the Six Medications.

¶ 13 Not only does this conclusion follow logically from Dr. Abel's testimony, but it finds support in *People in Interest of R.K.L.*, 2016 COA 84, 412 P.3d 827. In *R.K.L.*, a division of this court concluded that "mere speculation" that a patient "might need [the specified] medications in the future" was insufficient to establish that his psychiatrists were currently unable to provide effective treatment. *Id.* at ¶ 44, 412 P.3d at 837. This was especially true because the psychiatrists were successfully treating the patient with only one of the medications listed in their petition. *Id.*

¶ 14 While the *R.K.L.* division reached that conclusion in the context of the fourth *Medina* factor, we consider this reasoning relevant to our analysis of the third factor. The possibility that Zyprexa may no longer be an effective treatment for R.C., at some unspecified time in the future, is insufficient to justify the entry of an order authorizing the immediate administration of the Six Medications. *See id.* Moreover, the trial court's order authorizing

the immediate involuntary administration of the Six Medications cannot be squared with Dr. Abel's testimony that R.C. does not need the Six Medications now and may never need them.

¶ 15    Further, Dr. Abel did not testify that the Six Medications would be more effective in treating R.C. than is Zyprexa. Dr. Abel's general concern that R.C. had previously refused to take prescribed medications does not address why the People needed an order for the involuntary administration of the Six Medications while R.C. was voluntarily taking Zyprexa.

¶ 16    For these reasons, we conclude that the People did not carry their burden of proving the lack of a less intrusive alternative than administration of the Six Medications. *See Medina*, 705 P.2d at 973. The record evidence establishes that the continued administration of Zyprexa is a less intrusive treatment alternative than administering the Six Medications. We also therefore conclude that the record does not support the district court's determination of the third *Medina* factor. *See R.K.L.*, ¶ 44, 412 P.3d at 837.

### III.    Conclusion

¶ 17    The order is reversed.

JUDGE ROMÁN and JUDGE J. JONES concur.