24CA2273 Peo in Interest of Danford 05-01-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA2273
City and County of Denver Probate Court No. 24MH1290
Honorable Beth A. Tomerlin, Magistrate

---

The People of the State of Colorado,

Petitioner-Appellee,

In the Interest of Caley Danford,

Respondent-Appellant.

---

ORDER AFFIRMED

Division VII
Opinion by JUDGE LIPINSKY
Johnson and Moultrie, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced May 1, 2025

---

Katie McLoughlin, Acting City Attorney, Kathleen Bell, Assistant City Attorney, Denver, Colorado, for Petitioner-Appellee

The Mental Health Law Firm, Jonathan B. Culwell, Denver, Colorado, for Respondent-Appellant

¶ 1     Caley Danford appeals a magistrate's order authorizing the staff at the Colorado Mental Health Hospital in Fort Logan (the hospital) to involuntarily administer medication to her.  We affirm.

## I.     Background

¶ 2     In February 2024, Danford was committed to the custody of the Colorado Department of Human Services for competency restoration after having been found incompetent to proceed in her criminal cases.  She was admitted to the hospital for competency restoration services eight months later.  Dr. W. John Porter, a staff psychiatrist at the hospital, was her treating physician.

¶ 3     Danford was previously diagnosed with bipolar disorder.  After Danford's admission to the hospital, however, Dr. Porter provisionally diagnosed her with schizophrenia and noted that he was "still sifting through [her] symptoms, trying to get a precise diagnosis."  Dr. Porter reported that Danford exhibited symptoms of magical thinking, irritability, agitation, possible auditory hallucinations, delusional thought content, mood lability (prone to fluctuation), and impaired judgment.  In addition, Dr. Porter said that Danford had substantial disorders of her cognitive, volitional, and emotional processes.

¶ 4    In December 2024, Dr. Porter sought authorization to involuntarily treat Danford with several antipsychotic, mood stabilizing, and antianxiety medications, as well as medications to treat those drugs' possible side effects.  Dr. Porter said the involuntary treatment was necessary to prevent a significant and likely long-term deterioration of Danford's mental condition.  The magistrate appointed counsel for Danford and set the matter for an evidentiary hearing.

¶ 5    Following the hearing, at which both Dr. Porter and Danford testified, the magistrate issued an order finding that the People had proved all four elements of the test outlined in *People v. Medina*, 705 P.2d 961, 973 (Colo. 1985), for determining whether medication may be involuntarily administered to a mentally ill patient, consistent with the patient's constitutional rights.  The order authorized the hospital staff to administer the requested medications — Haldol, Invega, Prolixin, Risperdal, Zyprexa, Depakote, lithium, Ativan, Benadryl, and Cogentin — to Danford against her will.  The court also found that the hospital's requested physical assessments and labs were necessary to monitor the medications' effectiveness and safety to Danford.

## II.    Discussion

¶ 6    Danford argues that the magistrate applied an incorrect legal standard when the magistrate entered the involuntary medication order.  In particular, she argues that, when a court considers a petition to authorize the involuntary medication of a criminal defendant who is undergoing competency restoration and is not a danger to herself or others, due process requires that the court find evidence of "grave health concerns" before it can apply the *Medina* factors.  Danford argues that, in her case, the magistrate erred by ordering the involuntary administration of medication in the absence of a finding of "grave health concerns."  Because we conclude the magistrate applied the correct legal standard, we affirm the involuntary medication order.

¶ 7    "Whether a court applied the correct legal standard presents a question of law that we review de novo."  *People v. Vigil*, 2021 CO 46, ¶ 17, 488 P.3d 1150, 1154.

¶ 8    A person has a significant constitutionally protected liberty interest in avoiding the unwanted administration of antipsychotic medications.  *Sell v. United States*, 539 U.S. 166, 178 (2003); *Washington v. Harper*, 494 U.S. 210, 221 (1990).  Nonetheless, the

3

government may involuntarily administer medication to a mentally ill person under limited circumstances.

¶ 9    For example, when a criminal defendant is committed to a mental health facility to restore her competency, and the facility seeks authorization to involuntarily administer medication, a court generally must apply the test in *Sell*, 539 U.S. at 180-81, to determine whether the state's important governmental interest in bringing the defendant to trial for a serious crime outweighs the defendant's interest in refusing the medication.

¶ 10    The *Sell* Court, however, recognized that, "if forced medication is warranted for a *different* purpose" than competency restoration, "such as the purposes set out in *Harper* related to the individual's dangerousness, or purposes related to the individual's own interests where refusal to take drugs puts [the person's] health gravely at risk," then courts should apply the applicable state law test that accounts for those different purposes. *Sell*, 539 U.S. at 181-83. In *Harper*, the Court analyzed the due process protections afforded to mentally ill prisoners who refuse to take prescribed psychotropic medications and concluded that a state may administer medication to such individuals involuntarily "if the inmate is dangerous to

himself or others and the treatment is in the inmate's medical interest." *Harper*, 494 U.S. at 227.

¶ 11    Relying on this language in *Sell* and *Harper*, Danford argues that, absent a finding that the person is "dangerous" or has "grave health concerns," a court must apply the *Sell* test, and not the *Medina* test, to determine whether forced medication is warranted. But while *Sell* recognized two alternative purposes for the involuntary administration of medication — a person's dangerousness or purposes related to the person's own interests when their refusal to take medication puts the person's health gravely at risk — they are not the only purposes that can justify the forced administration of medication under a state law test, as the Supreme Court's use of "such as" demonstrates. *See Sell*, 539 U.S. at 182; *see League of Women Voters of Colo. v. Davidson*, 23 P.3d 1266, 1277 (Colo. App. 2001) (Use of the words "such as" implies "an exemplary, not exclusive, list."). Moreover, a division of this court recognized that "the test established in [*Medina*] controls" when the government seeks to involuntarily administer medications to further purposes other than rendering a defendant competent to

stand trial. *People in Interest of R.F.*, 2019 COA 110, ¶ 11 n.1, 451 P.3d 1238, 1241 n.1.

¶ 12     But even if the *Sell* Court had limited the purposes sufficient to justify an order for the involuntary administration of medication, we conclude that a person's significant and likely long-term psychiatric deterioration would fall within "purposes related to the individual's own interests where refusal to take drugs puts [the individual's] health gravely at risk." *Sell*, 539 U.S. at 182. In Colorado, a person is "gravely disabled" when, "as a result of a mental health disorder," the person is at risk, of, among other things, "significant psychiatric deterioration." § 27-65-102(17), C.R.S. 2024. Thus, we disagree with Danford to the extent she argues that a person's significant psychiatric deterioration is neither a legitimate government interest sufficient to justify an order compelling the involuntary administration of medication, nor evidence related to the person's own interests when the refusal to take medications puts the person's health gravely at risk as *Sell* contemplated.

¶ 13     The State alleged in its petition that the involuntary administration of medication was necessary because Danford was

"at risk of a significant and likely long-term deterioration of [her] mental condition." Thus, the petition demonstrates that the administration of the medications was not intended to restore Danford's competency but rather to address an alternative purpose — the risk of a significant and likely long-term deterioration of her mental condition. To determine whether a patient is in danger of such long-term deterioration, a court should consider the patient's need for the medication based on "the nature and gravity of the patient's illness, the extent to which the medication is essential to effective treatment, the prognosis without the medication, and whether the failure to medicate will be more harmful to the patient than any risks posed by the medication." *Medina*, 705 P.2d at 973; *see People v. Marquardt*, 2016 CO 4, ¶ 23, 364 P.3d 499, 505 (discussing "[t]he factors that make up the full test for determining whether a patient is at risk of a significant and likely long-term deterioration").

¶ 14 Dr. Porter testified at the hearing that Danford was at risk of significant and likely long-term deterioration of her mental condition without the requested treatment. He explained that Danford had a "pretty severe illness" and that medications were

"completely essential" to treat her effectively. Further, Dr. Porter opined that, without administration of the requested medications, Danford's prognosis would be "quite poor" and the failure to medicate her would be more harmful than the risk of possible side effects from the medications.

¶ 15 The magistrate found that Dr. Porter's testimony on these points was "credible" and "essentially uncontroverted." *See People in Interest of R.C.*, 2019 COA 99M, ¶ 7, 451 P.3d 1229, 1231 ("The [probate] court, as fact finder, 'has discretion to determine the credibility of the witnesses; the sufficiency, probative effect, and weight of the evidence; and the inferences and conclusions to be drawn from it.'" (quoting *People in Interest of S.M.A.M.A.*, 172 P.3d 958, 962 (Colo. App. 2007))).

¶ 16 Under these circumstances, the magistrate correctly applied the *Medina* test in determining that the involuntarily administration of antipsychotic medications was consistent with Colorado law and Danford's constitutional rights. And because Danford does not contest the sufficiency of the evidence supporting the magistrate's findings that all four *Medina* elements were met, we affirm the order.

### III. Disposition

¶ 17    The order is affirmed.

JUDGE JOHNSON and JUDGE MOULTRIE concur.