25CA0990 Peo in Interest of Powell 08-14-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA0990
Arapahoe County District Court No. 25MH149
Honorable H. Clay Hurst, Judge

---

The People of the State of Colorado,

Petitioner-Appellee,

In the Interest of Monique Powell,

Respondent-Appellant.

---

ORDER AFFIRMED IN PART AND REVERSED IN PART

Division IV
Opinion by JUDGE MEIRINK
Freyre and Gomez, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced August 14, 2025

---

Ron Carl, County Attorney, Meghan Rubincam, Senior Assistant County
Attorney, Aurora, Colorado, for Petitioner-Appellee

Tezak Law, P.C., Mary Tezak, Florence, Colorado, for Respondent-Appellant

¶ 1    Monique Powell appeals the district court's order authorizing an additional three months of short-term care and treatment under section 27-65-109, C.R.S. 2024, and the involuntary administration of the antipsychotic medication Prolixin. We reverse the portion of the order authorizing the involuntary administration of Prolixin, and we otherwise affirm.

## I.    Background

¶ 2    Following an evidentiary hearing in March 2025, the district court authorized three months of involuntary treatment and medication of Powell, a respondent with about eight years of history with mental health issues and "several previous visits to the emergency room based on various mental health concerns." *People in Interest of Powell,* slip op. at ¶ 12 (Colo. App. No. 25CA0504, May 8, 2025) (not published pursuant to C.A.R. 35(e)). This initial order — set to expire on May 27, 2025 — was affirmed on appeal. *See id.,* slip. op. at ¶ 25.

¶ 3    Powell remained hospitalized for a few weeks after the initial order, then she was discharged to outpatient care at Aurora Mental Health & Recovery (AMHR), where she was diagnosed with schizoaffective disorder, bipolar type. Dr. Janet Dodd, a

psychologist at AMHR, petitioned to extend Powell's certification for short-term treatment for an additional three months. Dr. Erin Smith, a staff psychiatrist at AMHR, petitioned to continue Powell's involuntary medication and requested four antipsychotic medications: Abilify, Prolixin, Thorazine, and Haldol.

¶ 4 Powell requested a hearing on the petitions. At the time of the hearing, Powell had been voluntarily taking Abilify for three weeks, and Dr. Smith rescinded the Haldol request because Powell was tolerating Abilify well and didn't like Haldol.

¶ 5 Following the evidentiary hearing, at which Dr. Smith and Powell testified, the district court found that the People had established, by clear and convincing evidence, the criteria for short-term certification under section 27-65-109, and each of the four *Medina* elements for involuntary administration of medication. *See People v. Medina*, 705 P.2d 961, 973 (Colo. 1985). It issued an order (1) extending Powell's certification until August 27, 2025, and (2) authorizing treatment with Abilify, which Powell was currently taking, and Prolixin — one backup antipsychotic.

## II. Discussion

¶ 6 Powell challenges the sufficiency of the evidence supporting the order. Specifically, she contends that the evidence was insufficient to support the district court's findings that (1) she was gravely disabled and (2) the People had established the third *Medina* element for Prolixin as a backup antipsychotic. We address each contention in turn.

### A. Standard of Review

¶ 7 When a respondent challenges the sufficiency of the evidence supporting the district court's findings, we review the court's conclusions of law de novo and defer to its findings of fact if supported by evidence in the record. *People v. Marquardt*, 2016 CO 4, ¶ 8. We review the record as a whole and in the light most favorable to the People, and we defer to the fact finder to resolve any conflicts in the testimony and determine the credibility of witnesses. *See People in Interest of Ramsey*, 2023 COA 95, ¶ 23. "The district court, as fact finder, 'has discretion to determine the credibility of the witnesses; the sufficiency, probative effect, and weight of the evidence; and the inferences and conclusions to be drawn from it.'" *People in Interest of R.C.*, 2019 COA 99M, ¶ 7 (quoting *People in*

*Interest of S.M.A.M.A.*, 172 P.3d 958, 962 (Colo. App. 2007)). A treating physician's testimony alone may constitute clear and convincing evidence. *See People v. Pflugbeil*, 834 P.2d 843, 846-47 (Colo. App. 1992).

### B. Certification for Short-Term Treatment

¶ 8    To authorize short-term treatment, the district court must find, by clear and convincing evidence, that the respondent has a mental health disorder and, as a result of the mental health disorder, is a danger to herself or others or is gravely disabled. § 27-65-109(1)(a); § 27-65-113(1), C.R.S. 2024.

¶ 9    Powell challenges the district court's finding that she is gravely disabled. As relevant here, a person is "gravely disabled" when, as a result of a mental health disorder, they are "incapable of making informed decisions about or providing for [their] essential needs without significant supervision and assistance from other people." § 27-65-102(17), C.R.S. 2024. And because they are incapable of making informed decisions, the gravely disabled person "is at risk of . . . significant psychiatric deterioration, or mismanagement of [their] essential needs that could result in substantial bodily harm." *Id.* Essential needs include medical care. *See People v. Taylor*, 618

P.2d 1127, 1134 (Colo. 1980) (a person's basic personal needs include "food, shelter, clothing, and medical care").

¶ 10    The district court found that Powell is gravely disabled based on its findings that (1) as a result of Powell's schizoaffective bipolar type disorder, she was unable to make informed decisions about her health; and (2) Powell didn't believe she needed treatment, and without medication, she would not be able to manage daily activities and would suffer brain damage. The record supports these findings.

¶ 11    Dr. Smith — who the court found to be "quite credible" — testified that Powell was not competent to participate in her treatment decisions because she didn't understand her diagnosis or the benefits of medication. Dr. Smith further testified that Powell lived with her mother and described how Powell's mother had directed Powell's treatment decisions, including the decision to medicate with Abilify. Both Powell and Dr. Smith testified that although Powell had recently accepted a one-month Abilify injection, she didn't believe she had a mental health disorder and would not continue medication without a court order. Dr. Smith

opined that without antipsychotic medication, Powell's prognosis was poor, and psychotic episodes would damage her brain.

¶ 12    We conclude that this testimony sufficiently supports the district court's finding of grave disability. Specifically, Dr. Smith's testimony supports a finding that because Powell is incapable of making informed decisions about her mental health without assistance, she is at risk of significant psychiatric deterioration or mismanagement of her essential needs that could result in brain damage. *See Pflugbeil*, 834 P.2d at 846-47; *see also* § 27-65-102(17).

¶ 13    We are not persuaded otherwise by Powell's argument that under *People v. Bucholz*, 778 P.2d 300, 302 (Colo. App. 1989), Dr. Smith's testimony that Powell was currently attending to her needs — with her mother's support and the assistance of medication — establishes that Powell is not gravely disabled. *See id.* (holding that a medicated respondent's prospective inability to provide for their basic personal needs when unmedicated is insufficient to support a finding of grave disability). *Bucholz* is inapposite because (1) its holdings interpret a different statutory definition of "gravely disabled" than the one that applies to Powell; and (2) here, the

district court properly found that Powell's *existing condition* meets the applicable definition of "gravely disabled."

¶ 14    Accordingly, we conclude that the district court properly extended Powell's certification for short-term treatment.

### C.    Involuntary Administration of Medication

¶ 15    A district court may authorize the involuntary administration of medication to a patient only if the People establish each of the following elements by clear and convincing evidence: (1) the patient is incompetent to participate effectively in the treatment decision; (2) treatment by medication is necessary either to prevent a significant and likely long-term deterioration in the patient's mental condition or to prevent the likelihood of the patient causing serious harm to themself or others in the institution; (3) a less intrusive treatment alternative isn't available; and (4) the patient's need for treatment with medication is sufficiently compelling to override their bona fide and legitimate interest in refusing medication. *Medina*, 705 P.2d at 973; *see People in Interest of Strodtman*, 293 P.3d 123, 131 (Colo. App. 2011).

¶ 16    Powell challenges the sufficiency of the evidence for the third *Medina* element.  This element "encompasses not only the gravity of

7

any harmful effects from the proposed treatment but also the existence, feasibility, and efficacy of alternative methods of treating the patient's condition or of alleviating the danger created by that condition." *Medina*, 705 P.2d at 974.  A less intrusive alternative is "an available treatment that has less harmful side effects and is at least as effective at alleviating a patient's condition as the proposed treatment." *Strodtman*, 293 P.3d at 133.

¶ 17     Powell does not object to the authorization of Prolixin because of its potential side effects.  Rather, citing *R.C.*, ¶ 13, and *People in Interest of R.K.L.*, 2016 COA 84, ¶ 44, she argues that because she is being successfully treated with Abilify, the evidence does not support authorization of Prolixin as a backup antipsychotic.  We agree.

¶ 18     For purposes of our analysis, we define "primary medication" as one that the petitioner seeks to immediately administer to a respondent.  And a "backup medication" is (1) of the same class as a primary medication and (2) one that the petitioner seeks to administer only if certain conditions arise.

¶ 19     In *R.C.*, a division of this court concluded that "[t]he possibility that that [a primary medication] may no longer be an effective

treatment . . . at some unspecified time in the future, is insufficient to justify" an order authorizing backup medications. *R.C.*, ¶ 14. In *People in Interest of D.N.W.*, 2024 COA 129, ¶ 18, another division concluded that to justify an order authorizing the involuntary administration of a backup medication, there must be a specific articulable concern that the primary medication could be ineffective, based on the respondent's medical history. Following these authorities, we do not perceive sufficient evidence that Abilify alone is not a less intrusive treatment than Abilify and Prolixin.

¶ 20    The district court rested its legal conclusion as to the third *Medina* element on a finding that in case a dangerous side effect arose from treatment with Abilify, it was "necessary to have an alternative to prevent [brain] damage." But we discern no record evidence supporting the court's premise that Powell may suffer a dangerous side effect from Abilify — possibly rendering it an ineffective treatment at some time in the future. *See R.C.*, ¶ 14. Dr. Smith did not articulate such a concern. To the contrary, she testified that Powell was tolerating Abilify well without side effects, and she planned to keep Powell on long-acting injections of Abilify.

Moreover, the district court found that Powell "had *not* had any serious side effects." (Emphasis added.)

¶ 21    According to Dr. Smith's testimony, Powell had not displayed symptoms of psychosis since April 10, indicating that Abilify is an effective treatment. Dr. Smith explained her sole rationale for requesting backup antipsychotics as follows: so she would have options available "should the Abilify not to be a good fit for [Powell] down the line." Applying *R.C.* and *D.N.W.*, we conclude that this nonspecific speculation is insufficient to justify an order authorizing the involuntary administration of Prolixin.

## III.    Disposition

¶ 22    The order is reversed to the extent it authorizes the involuntary administration of Prolixin. In all other respects, the order is affirmed.

JUDGE FREYRE and JUDGE GOMEZ concur.