25CA2188 Peo in Interest of Tumlin 12-31-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 25CA2188
Summit County District Court No. 25MH10
Honorable Karen A. Romeo, Judge

The People of the State of Colorado,

Petitioner-Appellee,

In the Interest of Gregory Scott Tumlin,

Respondent-Appellant.

ORDER AFFIRMED

Division II
Opinion by JUDGE BROWN
Fox and Meirink, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced December 31, 2025

Heidi S. McCollum, District Attorney, Mary Ritchie, Deputy District Attorney, Eagle, Colorado, for Petitioner-Appellee

Tezak Law, P.C., Mary Tezak, Florence, Colorado, for Respondent-Appellant

¶ 1     Gregory Scott Tumlin appeals the district court's order authorizing the Denver Veterans Affairs Medical Center (VA) to treat and medicate him against his will for ninety days, under section 27-65-109, C.R.S. 2025.  We affirm.

## I.     Background

¶ 2     Tumlin suffers from schizoaffective disorder, bipolar type.  He has an extensive history of prior psychiatric hospitalizations and medication refusal, and he has been admitted to the VA inpatient psychiatric unit eighteen times.  According to Dr. Jayson Wild, his treating physician, Tumlin's condition has resulted in repeated cycles of hospital admissions, discharges leading to an inability to care for his basic needs, and readmissions to the VA.

¶ 3     Most recently, Tumlin appeared at the VA emergency department seeking treatment for a callus on his heel and asking for help with an "exit wound."  He behaved erratically and agreed to psychiatric hospitalization.  When he was first evaluated, he displayed symptoms including delusions, paranoia, disorganized thoughts, disorganized and pressured speech, and hyperactivity.  Over the next several days, his thoughts and behaviors remained disorganized, and his condition "unravel[ed]."  He expressed

1

delusional beliefs including that the VA staff were trying to poison him and that he is a judge, senator, and physician. He refused psychiatric medication, threatened staff, destroyed property, and hit nurses' hands. The VA placed Tumlin on a mental health hold, began administering medications on an emergency basis, and petitioned to (1) certify him for short-term treatment and (2) medicate him against his will.

¶ 4 The district court conducted an evidentiary hearing at which only Dr. Wild testified. The parties agree that Tumlin was given notice and an opportunity to appear but waived his right to do so. The court found that the People had established, by clear and convincing evidence, the criteria for short-term certification under section 27-65-109 and each of the four *Medina* elements for involuntary administration of medication. *See People v. Medina*, 705 P.2d 961, 973 (Colo. 1985). It issued an order (1) granting the requested short-term certification and (2) authorizing treatment with seven psychiatric medications and three medications to treat side effects.

## II.    Discussion

¶ 5    Tumlin challenges the sufficiency of the evidence supporting the order.  Specifically, he contends that the evidence was insufficient to support the district court's findings that (1) he was gravely disabled and (2) the People had established the fourth *Medina* element.  We address and reject both contentions.

### A.    Standard of Review

¶ 6    When a respondent challenges the sufficiency of the evidence, we review the court's conclusions of law de novo and defer to its findings of fact if supported by evidence in the record.  *People v. Marquardt*, 2016 CO 4, ¶ 8.  We review the record as a whole and in the light most favorable to the People.  *See People in Interest of Ramsey*, 2023 COA 95, ¶ 23.  "The district court, as fact finder, 'has discretion to determine the credibility of the witnesses; the sufficiency, probative effect, and weight of the evidence; and the inferences and conclusions to be drawn from it.'"  *People in Interest of R.C.*, 2019 COA 99M, ¶ 7 (quoting *People in Interest of S.M.A.M.A.*, 172 P.3d 958, 962 (Colo. App. 2007)).

## B. Certification for Short-Term Treatment

¶ 7 To authorize short-term treatment, the district court must find, by clear and convincing evidence, that the respondent has a mental health disorder and, as a result of the mental health disorder, is a danger to themself or others or is gravely disabled. § 27-65-109(1)(a); § 27-65-113(1), C.R.S. 2025. A treating physician's testimony alone may constitute such clear and convincing evidence. *See People v. Pflugbeil*, 834 P.2d 843, 846-47 (Colo. App. 1992).

¶ 8 Tumlin challenges the district court's finding that he is gravely disabled. As relevant here, a person is "gravely disabled" when, as a result of a mental health disorder, they are "incapable of making informed decisions about or providing for [their] essential needs without significant supervision and assistance from other people." § 27-65-102(17), C.R.S. 2025. And because they are incapable of making informed decisions, the gravely disabled person "is at risk of . . . significant psychiatric deterioration[] or mismanagement of [their] essential needs that could result in substantial bodily harm." *Id.* Essential needs include medical care. *See People v. Taylor*, 618

P.2d 1127, 1134 (Colo. 1980) (a person's basic personal needs include "food, shelter, clothing, and medical care").

¶ 9     The district court relied on Dr. Wild's opinion — which it found both credible and reliable — to find that Tumlin is gravely disabled.  The court noted (1) that as a result of Tumlin's schizoaffective bipolar-type disorder, he is unable to recognize reality and take care of his basic personal needs; (2) Dr. Wild's opinion that without medication, Tumlin is at risk of substantial psychiatric deterioration; and (3) Tumlin's stipulation that he refuses voluntary treatment.  The record supports these findings.

¶ 10    In written statements to the court, Dr. Wild asserted that Tumlin was "unable to display a level of organization" to safely navigate the outside world, and he was "unable to care for himself and maintain safe behavior when he is not taking medication." Dr. Wild also testified that as a result of Tumlin's mental health disorder, (1) he was unable to care for his needs for food, shelter, clothing, and medical care; (2) this disability placed him at serious risk of psychiatric deterioration (among other qualifying risks); and (3) his condition was deteriorating without medication.  As to medical care specifically, Dr. Wild testified that Tumlin is incapable

of participating in health decisions because of his delusions and because he is "adamant" that he does not have schizoaffective bipolar-type disorder. Tumlin, through his attorney, admitted that he denies having a mental health disorder and refuses voluntary treatment.

¶ 11    We conclude that these statements and testimony sufficiently support the district court's finding of grave disability. Specifically, Dr. Wild's testimony supports a finding that because Tumlin is incapable of making informed decisions about his mental health without assistance, he is at risk of significant psychiatric deterioration. *See Pflugbeil*, 834 P.2d at 846-47; *see also People in Interest of C.J.R.*, 2016 COA 133, ¶ 32 (holding that a patient's failure to recognize his mental illness demonstrates that he is incapable of participating in health decisions).

¶ 12    Tumlin simply points to contrary evidence: Dr. Wild's testimony that (1) approximately two weeks earlier, a different provider deemed Tumlin to be not gravely disabled; and (2) Tumlin had previously demonstrated an ability to care for his basic needs and to advocate for himself. To the extent Tumlin asks us to reweigh the evidence, we decline to do so. *See R.C.*, ¶ 7.

¶ 13    We conclude that the district court did not err by ordering

Tumlin's certification for short-term treatment.

### C.    Involuntary Administration of Medication

¶ 14    A district court may authorize the involuntary administration

of medication to a patient only if the People establish each of the

following elements by clear and convincing evidence: (1) the patient

is incompetent to participate effectively in the treatment decision;

(2) treatment by medication is necessary either to prevent a

significant and likely long-term deterioration in the patient's mental

condition or to prevent the likelihood of the patient causing serious

harm to themself or others in the institution; (3) a less intrusive

treatment alternative isn't available; and (4) the patient's need for

treatment with medication is sufficiently compelling to override

their bona fide and legitimate interest in refusing medication.

*Medina*, 705 P.2d at 973; *see People in Interest of Strodtman*, 293

P.3d 123, 131 (Colo. App. 2011).

¶ 15    Tumlin challenges the district court's finding on the fourth

*Medina* element.  In assessing the sufficiency of evidence for the

fourth *Medina* element, a court must determine (1) "whether the

patient's refusal is bona fide and legitimate"; and (2) if so, "whether

7

the prognosis without treatment is so unfavorable that the patient's personal preference must yield to the legitimate interests of the state in preserving the life and health of the patient placed in its charge and in protecting the safety of those in the institution." *Medina*, 705 P.2d at 974.

¶ 16    Tumlin objected to taking medication based solely on his belief that he does not have a mental illness requiring medication. Without deciding whether this belief was bona fide and legitimate, the district court found that Tumlin's need for treatment overrode any legitimate interest in refusing treatment.  On appeal, Tumlin offers a new and conclusory argument: his interest in avoiding potential side effects outweighs the People's interests.

¶ 17    We conclude that the record supports the court's finding on the fourth *Medina* element.  As described in parts I and II.B, Dr. Wild testified that Tumlin's behavior was verbally and physically threatening, his mental health condition was deteriorating, and he was at risk of further deterioration without medication.  Dr. Wild also testified that to his knowledge, Tumlin had not previously suffered significant side effects from the proposed medications. There was no evidence or argument to the contrary.

8

¶ 18    Because the record supports a finding that Tumlin's prognosis without medication is so unfavorable that any bona fide and legitimate interest in refusal must yield to the People's legitimate interests in preserving his health and in protecting the safety of those in the VA, we will not disturb it.  *See Ramsey*, ¶ 23.  Again, to the extent Tumlin asks us to reweigh the evidence, we decline to do so.  *See R.C.,* ¶ 7.

### III.   Disposition

¶ 19    The order is affirmed.

JUDGE FOX and JUDGE MEIRINK concur.