The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
December 4, 2025

**2025COA92**

**No. 25CA1724, *People in the Interest of N.G.* — Health and Welfare — Behavioral Health — Involuntary Commitment of a Person with a Substance Use Disorder**

A division of the court of appeals applies section 27-81-112, C.R.S. 2025, for the first time in a published opinion to affirm a court order authorizing an involuntary commitment to the Colorado Department of Human Services, Behavioral Health Administration, for an incapacitating substance use disorder. This statute serves as an important tool in assisting those who meet the statutory criteria for involuntary commitment. In applying the statute, our discussion of the evidence that supports commitment is instructive.

COLORADO COURT OF APPEALS     **2025COA92**

Court of Appeals No. 25CA1724
City and County of Denver Probate Court No. 25MH2036
Honorable Beth A. Tomerlin, Magistrate

The People of the State of Colorado,

Petitioner-Appellee,

In the Interest of N.G.,

Respondent-Appellant.

ORDER AFFIRMED

Division II
Opinion by JUDGE FOX
Brown and Meirink, JJ., concur

Prior Opinion Announced November 13, 2025, <u>WITHDRAWN</u>

Opinion Previously Announced as "**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**" on November 13, 2025, is now Designated for Publication

Miko Brown, City Attorney, Kathleen Bell, Assistant City Attorney, Denver, Colorado, for Petitioner-Appellee

Tezak Law, P.C., Mary Tezak, Florence, Colorado, for Respondent-Appellant

¶ 1     Respondent, N.G., appeals a magistrate's order committing her to the custody of the Colorado Department of Human Services, Behavioral Health Administration (BHA), under section 27-81-112, C.R.S. 2025.  We affirm.

## I.     Background

¶ 2     In early August 2025, N.G. was intoxicated and fell from a bus, injuring her face.  She was taken to an emergency room, where her son learned that her liver was in "complete failure" and that she "need[ed] to be committed."  Days later, N.G. was referred to Centennial Peaks Hospital (the hospital).  Because she would not go voluntarily, N.G.'s son filed an application for emergency commitment under section 27-81-111, C.R.S. 2025.  In the application, N.G.'s son alleged that his mother is a chronic alcohol abuser who engages in behavior that places her at significant risk of harm, has a history of injurious accidents while intoxicated, and lacks stable housing.  Based on the application for emergency commitment, N.G. was placed at the hospital under the care and treatment of Dr. Roderick O'Brien, among others.

¶ 3     On August 13, 2025, the People petitioned a magistrate under section 27-81-112 to authorize the involuntary commitment of N.G.

to the custody of the BHA to receive substance use treatment. The People included with their petition a physician's certificate for involuntary commitment, completed by Dr. O'Brien, and an application for involuntary commitment, completed by N.G.'s son. The magistrate appointed counsel for N.G. and set the matter for an evidentiary hearing.

¶ 4    At the evidentiary hearing, Dr. O'Brien, N.G.'s son, Shiloh Kirby (an Involuntary Commitment Program coordinator and trainer at the BHA), and N.G. testified. Dr. O'Brien testified without objection as an expert in the field of addiction medicine. He summarized N.G.'s "long history" of alcohol use and explained how she met the diagnostic criteria for substance use disorder. N.G.'s son described how his mother's drinking has affected her ability to care for herself and his concern that without treatment she will die. Kirby, who testified as an expert in the field of involuntary commitment coordination without objection, explained that N.G. had been administered the American Society of Addiction Medicine (ASAM) Criteria assessment. Kirby then explained that, based on N.G.'s assessment results, the recommended placement was a clinically managed residential treatment program. N.G. admitted to

having a problem with alcohol but said she did not believe inpatient treatment was appropriate. Instead, she testified that outpatient treatment would be a better fit for her "mentally" given her severe post-traumatic stress disorder (PTSD).

¶ 5 The magistrate granted the petition, finding that the testimony provided by Dr. O'Brien, N.G.'s son, and Kirby was "essentially uncontroverted" and "credible" and N.G.'s testimony, to the extent N.G. disagreed with the others' testimony or her testimony was contradicted by these witnesses, was not credible. The magistrate found by clear and convincing evidence that N.G. is a person with a substance use disorder who is incapacitated by substances and has refused voluntary treatment. Accordingly, the magistrate entered an order involuntarily committing N.G. to the BHA's custody for ninety days of substance use treatment.

## II. Discussion

¶ 6 N.G. challenges the sufficiency of the evidence supporting the order. In particular, she contends that the evidence was insufficient to support the magistrate's finding that she is incapacitated by substances. We disagree.

### A. Standard of Review and Applicable Law

¶ 7 When a party challenges the sufficiency of the evidence, we review the record de novo, viewing it as a whole and in the light most favorable to the People, to determine whether the evidence is sufficient to support the court's decision. *People in Interest of Ramsey*, 2023 COA 95, ¶ 23. Likewise, we review de novo the court's conclusions of law, but we defer to its findings of fact if supported by the record. *People in Interest of C.A.K.*, 652 P.2d 603, 613 (Colo. 1982); *People in Interest of Strodtman*, 293 P.3d 123, 131 (Colo. App. 2011). "The district court, as fact finder, 'has discretion to determine the credibility of the witnesses; the sufficiency, probative effect, and weight of the evidence; and the inferences and conclusions to be drawn from it.'" *People in Interest of R.C.*, 2019 COA 99M, ¶ 7 (quoting *People in Interest of S.M.A.M.A.*, 172 P.3d 958, 962 (Colo. App. 2007)).

¶ 8 Section 27-81-112(1) provides, in pertinent part, that a court may commit a person to the custody of the BHA if the person has a substance use disorder and is incapacitated by substances. Before entering a commitment order, the court must find that grounds for involuntary commitment have been established by clear and

4

convincing evidence.  § 27-81-112(5).  Evidence is clear and convincing when it "persuades the trier of fact that the truth of the contention is 'highly probable.'"  *People v. Taylor*, 618 P.2d 1127, 1136 (Colo. 1980) (quoting *Page v. Clark*, 592 P.2d 792, 800 (Colo. 1979)).

## B.    Incapacitated by Substances

¶ 9    As relevant here, "incapacitated by substances" means that a person, because of alcohol use,

> is unconscious, has his or her judgment otherwise so impaired that he or she is incapable of realizing and making a rational decision with respect to his or her need for treatment, is unable to take care of his or her basic personal needs or safety, or lacks sufficient understanding or capacity to make or communicate rational decisions about himself or herself.

§ 27-81-102(9), (9.4), C.R.S. 2025.

¶ 10    The magistrate found that (1) N.G.'s "judgment [is] so impaired that she is incapable of realizing and making a rational decision with respect to her need for treatment," and (2) she is "unable to take care of her basic personal needs and safety."  The record before us supports these findings.

5

¶ 11     Dr. O'Brien opined that N.G. cannot make "reasonable and informed decisions about her health care" due to "years of heavy alcohol use," which has resulted in metabolic and physical injuries. For example, Dr. O'Brien explained that based on recent lab tests, N.G. is in "end-stage liver failure." And he described two recent incidents that occurred when N.G. was intoxicated. The first was a fall that resulted in injuries to her facial bones and required surgery. However, because "her liver function was too dangerously impaired by her alcoholism," she was "not able to receive [the] surgery that should . . . have been done." The second was the fall getting off the bus that resulted in "pretty severe injuries" to her face, which were still visible at the hearing.

¶ 12     Dr. O'Brien explained that these injuries caused N.G. "to be in a state where she is chronically impaired, and is not able to reasonably make good judgment," "good decisions," or "reasonable and informed decisions about her health care." He testified that she "demonstrates a huge lack of understanding, and lack of insight," about her alcoholism. Dr. O'Brien also testified that N.G. has "anosognosia," which is "a blind spot about her own illness," meaning "she doesn't recognize the severity of her alcoholism" and

cannot "process and recognize that the consequences of failing to treat [her illness are] likely to be lethal."

¶ 13    Kirby testified that N.G. has "limited insight into the severity of how alcohol use has impacted [her] medical and psychiatric conditions" and that outpatient treatment would not be an appropriate placement for her, despite N.G.'s preference for it, given her ASAM assessment results.  Further, Kirby explained that N.G. "has had multiple attempts at" engaging in "that level of [outpatient] care and also multiple failures," and therefore "a higher level of care is really needed."

¶ 14    Concerning N.G.'s ability to take care of her own basic personal needs or safety, Dr. O'Brien opined that N.G. is unable to take care of her personal safety.  N.G.'s son testified that his mother's drinking has affected her ability to obtain and maintain employment and housing.  He explained that, when she drinks, she "neglect[s] all of her responsibilities, financially, medically, [and] personally.  Her entire life just gets consumed by alcohol, so she takes care of nothing but drinking."  And Dr. O'Brien, N.G.'s son, and Kirby each testified regarding their concern that if N.G. did not receive the recommended inpatient treatment, "she would die."

¶ 15    This evidence, when viewed as a whole and in the light most favorable to the People, is more than sufficient to support the magistrate's finding by clear and convincing evidence that N.G. is incapacitated by substances.

¶ 16    N.G. asserts that she is not incapacitated by substances because she readily admits that she has a problem with alcohol and plans to continue treatment on an outpatient basis because the inpatient environment triggers her severe PTSD.  While we commend N.G. for her recognition that she has a problem with alcohol, we are unpersuaded by her argument.

¶ 17    The magistrate found, with record support, that N.G.'s PTSD is "not a contraindication for the recommended level of treatment." Indeed, Dr. O'Brien testified that her treatment providers considered her PTSD diagnosis "very seriously" and were "aware of the potential barrier in having PTSD as a co-occurring illness, and that the setting for residential could potentially cause re-traumatization."  But he also testified that, "empirically," N.G. is doing "quite well" in the inpatient setting — she has expressed "a lot of appreciation and gratitude" about the relationships she has formed with other patients and has been getting "adequate sleep,"

and the staff has not observed "any complications of PTSD." Additionally, Kirby testified that, while N.G.'s assessments "indicate an underlying diagnosis of PTSD," there is "no indication" that her PTSD has "impact[ed] her state of mind" or "would impact her ability to participate in [inpatient] treatment at this time."

¶ 18 The magistrate expressly weighed this expert testimony against N.G.'s testimony "that she's able to take care of herself, she thinks she's functioning just fine, and that outpatient treatment would meet her needs." Noting that it was "sensitive to [N.G.]'s concerns about residential or inpatient level of care and her PTSD," the magistrate found N.G.'s "testimony to not be entirely credible, in light of the more credible testimony from Dr. O'Brien and Ms. Kirby." Because the record supports the magistrate's determination, we will not disturb it, and to the extent N.G. asks us to second-guess witness credibility or draw different inferences from the testimony, we decline to do so. *See R.C.*, ¶ 7.

### III.   Disposition

¶ 19 The order authorizing involuntary commitment pursuant to section 27-81-112 is affirmed.

JUDGE BROWN and JUDGE MEIRINK concur.

9