26CA0407 Peo in Interest of Harris 05-14-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 26CA0407
City and County of Denver Probate Court No. 25MH830
Honorable Beth A. Tomerlin, Magistrate

---

The People of the State of Colorado,

Petitioner-Appellee,

In the Interest of Lincoln Harris,

Respondent-Appellant.

---

ORDER AFFIRMED

Division A
Opinion by JUSTICE MARTINEZ*
Román, C.J., and Hawthorne*, J., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced May 14, 2026

---

Miko Brown, City Attorney, Hayley Swestka, Assistant City Attorney, Denver, Colorado, for Petitioner-Appellee

Tezak Law, P.C., Mary Tezak, Florence, Colorado, for Respondent-Appellant


*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2025.

¶ 1    Respondent, Lincoln Harris, appeals a magistrate's order authorizing his certification for long-term mental health treatment at the Colorado Mental Health Hospital in Pueblo (the hospital). We affirm.

## I.    Background

¶ 2    In March 2025, Harris was admitted to the hospital for restoration treatment after being found incompetent to proceed in a criminal case. Less than two weeks later, the criminal court dismissed Harris's charges, which prompted the hospital to request a seventy-two-hour mental health hold. The hospital then petitioned for short-term mental health treatment.

¶ 3    After extending the short-term certification, the hospital petitioned for long-term mental health treatment, alleging that Harris was gravely disabled. In February 2026, a magistrate held a hearing, at which Dr. Zachary Wickline (one of Harris's treating physicians) and Harris testified. After hearing the evidence, the magistrate found that Harris was gravely disabled and granted the request for long-term certification.

## II.    Long-Term Certification

¶ 4    Harris asserts that there was insufficient evidence to establish that he was gravely disabled, and the magistrate therefore erred by authorizing the long-term certification.  We are not persuaded.

¶ 5    When a patient challenges the sufficiency of the evidence, we must affirm if the evidence, viewed as a whole and in the light most favorable to the People, is sufficient to support the order.  *People in Interest of R.K.L.*, 2016 COA 84, ¶ 13.  As the fact finder, the magistrate determines the sufficiency, probative effect, and weight of the evidence, along with the inferences and conclusions to be drawn from it.  *People in Interest of R.C.*, 2019 COA 99M, ¶ 7.  We must defer to the magistrate's factual findings if they have record support, but we review the magistrate's legal conclusions de novo. *R.K.L.*, ¶ 13.

¶ 6    To authorize long-term certification for mental health treatment, the magistrate must find that the patient has a mental health disorder and, as a result of that disorder, is gravely disabled or a danger to themselves or others.  § 27-65-110(1)(a), C.R.S. 2025.  Gravely disabled means that, because of a mental health disorder, a person is incapable of making informed decisions about

or providing for their essential needs without significant supervision and assistance from other people. § 27-65-102(17), C.R.S. 2025; *see also People v. Taylor*, 618 P.2d 1127, 1134 (Colo. 1980) (noting that a person is gravely disabled if they cannot "take care of basic personal needs," such as "food, shelter, clothing, and medical care").

¶ 7    The magistrate determined that the evidence presented at the hearing established that Harris was gravely disabled as defined by section 27-65-102(17). In reaching this decision, the court pointed to the following evidence in the record:

- Harris indicated that he wanted to "discharge to homelessness" and stated that he was "okay living on the side of the road" and "get[ting] food from the kindness of strangers."

- Harris had an "addiction to substances" and would "likely engage in those addictions" if released, "which will place him in many risky sexual situations."

- Although Harris currently engaged in some safe hygiene practices, he was in a "highly structured setting" at the

hospital and even then "require[d] some prompting from others."

- Harris did not have a well-defined plan "on where he would go" if released and did not "know how to get medications" if he ran out.

Ultimately, the magistrate concluded that Harris "could not make informed decisions for himself without assistance," which would likely lead him "back to an inpatient setting within days or weeks."

¶ 8 The record supports the magistrate's findings. Dr. Wickline testified that Harris had been diagnosed with schizophrenia, which caused him to be highly impulsive, led to pleasure seeking behaviors, and frequently got him into dangerous situations. The doctor noted that Harris's schizophrenia impaired his judgment and that Harris would often fluctuate between good judgment and impulsive behavior. Dr. Wickline said that, during hospitalization, Harris had been (1) involved in multiple physical altercations and (2) engaged in hypersexual behaviors, such as inserting his fingers into his rectum and flinging blood and feces onto the walls or at staff.

¶ 9    Dr. Wickline opined that, because of his schizophrenia, Harris was gravely disabled. In support of his opinion, the doctor pointed to Harris's repeated statements that he would prefer discharging to homelessness, lack of a realistic plan for obtaining food or shelter, and addiction to methamphetamine. Dr. Wickline believed that, without structured support, Harris could not obtain medications, medical care, or follow-up treatment, and he would therefore be at substantial risk of physical harm, worsening medical issues, and psychiatric decompensation.

¶ 10    Still, Dr. Wickline acknowledged that Harris's condition had improved significantly during his stay at the hospital, especially after he was prescribed clozapine. For example, the doctor noted that Harris's hypersexual behavior, hallucinations, and delusions had become less frequent and that Harris had gradually been moved to progressively lower-acuity units within the hospital. However, Dr. Wickline opined that, because of Harris's impaired judgment, he was unlikely to continue his medication if released from the hospital and noted that he would be vulnerable to a rapid psychiatric deterioration as a result.

¶ 11     For his part, Harris testified that, if released, he would stay at a homeless shelter or attempt to return to his tribe in Wyoming. He also said that he would continue taking his medications in the community. But he refused to apply for public benefits and said that he would obtain food, shelter, and medication from churches or "people around." And he insisted that he could meet his basic needs by way of "self-motivation."

¶ 12     On appeal, Harris asserts that there was insufficient evidence that he was gravely disabled because the evidence showed that (1) his symptoms had improved; (2) he voluntarily took his prescribed medications; (3) he had some insight into his mental illness and the need for medication; (4) he could maintain his basic personal needs in the hospital; and (5) he expressed "viable post-discharge" options. We disagree with this assertion for two reasons.

¶ 13     First, Harris relies, in part, on his own testimony to support this argument, but, to the extent that Harris's testimony conflicted with Dr. Wickline's, the magistrate did not find Harris's testimony credible. Because we must defer to the magistrate's credibility determinations, Harris's conflicting testimony does not help his

6

argument. *See People in Interest of Ramsey*, 2023 COA 95, ¶ 38 (rejecting the respondent's argument because "[t]he probate court credited the treating psychiatrist's testimony and did not credit Ramsey's testimony").

¶ 14 Second, the evidence was sufficient for the magistrate to determine that Harris was gravely disabled based on Dr. Wickline's testimony that, because of his mental health disorder, Harris could not make informed decisions about or provide for his essential needs without significant supervision and assistance from others. *See id.* at ¶ 37 (noting that "[a] finding that a respondent is gravely disabled may be shown by expert medical opinion"). Although some evidence supports Harris's position, the magistrate considered this evidence and weighed it against the evidence supporting a finding that Harris was gravely disabled. Because we may not reweigh the evidence to reach a different result, we reject Harris's argument. *See R.C.*, ¶ 7; *see also People in Interest of N.G.*, 2025 COA 92, ¶ 18 (noting that an appellate court may "draw different inferences from the testimony").

¶ 15 Therefore, viewed as a whole and in the light most favorable to the People, we conclude that the evidence was sufficient to establish

7

that Harris was gravely disabled as defined in section 27-65-102(17). *See R.K.L.*, ¶¶ 13, 27 (concluding that the evidence was sufficient where the respondent "was not able to make a good assessment of what was a realistic way to provide for himself"); *see also Ramsey*, ¶ 35 (evidence showed that the respondent was homeless and could not communicate her medical concerns).

¶ 16     Finally, Harris asserts that the evidence did not establish that he was a danger to himself or others. But the magistrate did not find that he was a danger to himself or others, so we do not address this argument. *See* § 27-65-110(1)(a) (requiring a showing of grave disability *or* dangerousness); *see also Lombard v. Colo. Outdoor Educ. Ctr., Inc.*, 187 P.3d 565, 571 (Colo. 2008) ("Generally, we presume the disjunctive use of the word 'or' marks distinctive categories.").

### III.   Disposition

¶ 17     The order is affirmed.

CHIEF JUDGE ROMÁN and JUDGE HAWTHORNE concur.